**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**

|  |  |
|---|---|
| *In re Gulshan Management Services Data Incident Litigation* | Case No. 4:26-cv-00200<br><br>**Judge Lee H. Rosenthal**<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT** |

## TABLE OF CONTENTS

I.   FACTUAL BACKGROUND ........................................................................................ 1

II.  LEGAL STANDARD ................................................................................................ 2

III. PLAINTIFFS' COMPLAINT SATISFIES RULE 8 REQUIREMENTS ............................ 2

IV.  PLAINTIFFS' NEGLIGENCE ALLEGATIONS ARE SUFFICIENT ................................ 4

   A.  PLAINTIFFS ADEQUATELY ALLEGE DEFENDANT OWED THEM A DUTY OF CARE ................ 4

   B.  PLAINTIFFS IDENTIFY STATUTORY FRAMEWORKS TO ALLEGE A STANDARD OF DUTY ........ 7

   C.  PLAINTIFFS' ALLEGATIONS PLAUSIBLY PLEAD DEFENDANT'S BREACH OF DUTY .............. 8

   D.  PLAINTIFFS SUFFICIENTLY PLEAD ACTUAL INJURY AND REQUISITE CAUSATION .............. 11

V.   PLAINTIFFS SUFFICIENTLY ALLEGE BREACH OF IMPLIED CONTRACT .......... 14

VI.  PLAINTIFFS SUFFICIENTLY ALLEGE UNJUST ENRICHMENT .............................. 16

VII. PLAINTIFFS ADEQUATELY ALLEGE A VIOLATION OF THE ICFA ...................... 19

   A.  PLAINTIFFS HAVE ESTABLISHED A NEXUS WITH THE STATE OF ILLINOIS .......................... 19

   B.  UNFAIR PRONG OF THE ICFA DOES NOT REQUIRE THAT PLAINTIFFS SATISFY FRCP 9(B) 20

   C.  PLAINTIFFS HAVE ALLEGED LOSSES WITHIN THE MEANING OF THE ICFA ....................... 22

VIII. PLAINTIFFS ARE ENTITLED TO SEEK EMOTIONAL DAMAGES AND
      INJUNCTIVE RELIEF .......................................................................................... 23

   A.  PLAINTIFFS CAN RECOVER DAMAGES FROM EMOTIONAL DISTRESS ............................... 23

   B.  PLAINTIFFS CAN SEEK INJUNCTIVE RELIEF .................................................................... 23

IX.  CONCLUSION ...................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Aguiluz v. Citibank, N.A.*,
No. 2:18-CV-05126, 2018 WL 5773302 (E.D. La. Nov. 2, 2018)............................................ 24

*Alanis v. U.S. Bank Nat'l Ass'n*,
2024 WL 626622 (W.D. Tex. Jan. 31, 2024) ....................................................................... 2

*Anderson v. Hannaford Bros. Co.*,
659 F.3d 151 (1st Cir. 2011) ............................................................................................. 16

*Ashcroft v. Iqbal*,
556 U.S. 662, (2009) ............................................................................................... 2, 10, 14

*Attias v. CareFirst, Inc.*,
865 F.3d 620 (D.C. Cir. 2017)........................................................................................... 12

*Avery v. State Farm Mut. Auto Ins. Co.*,
216 Ill.2d 100 (2005) ........................................................................................................ 19

*Baton v. Ledger SAS*,
740 F. Supp. 3d 847 (N.D. Cal. 2024)............................................................................... 24

*BCBSM, Inc. v. Walgreen Co.*,
512 F. Supp. 3d 837 (N.D. Ill. 2021)................................................................................. 19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................................ 2, 8

*Bowen v. Paxton Media Group, LLC*,
2022 WL 4110319 (W.D. Ky. Sep. 8, 2022)...................................................................... 18

*Bruno v. Donohoe as Tr. of Texas Med. Liab. Tr.*,
754 F. Supp. 3d 737 (W.D. Tex. 2024) ........................................................................ 11, 18

*Burlington N. R. Co. v. Sw. Elec. Power Co.*,
925 S.W.2d 92 (Tex. App. 1996) ...................................................................................... 18

*Cabezas v. Mr. Cooper Grp. Inc.*,
2025 WL 2053287 (N.D. Tex. July 22, 2025)........................................................... 9, 11, 23

*Castillo v. Berry Bros Gen. Contractors Inc.*,
No. 6:24-CV-01723, 2025 WL 1062091 (W.D. La. Apr. 8, 2025)........................................ 11

*Castillo v. Seagate Tech., LLC*,
2016 WL 9280242 (N.D. Cal. Sept. 14, 2016).................................................................... 16

*Dieffenbach v. Barnes & Noble, Inc.*,
  887 F.3d 826 (7th Cir. 2018) ................................................................................ 22

*E-Learning LLC v. AT&T Corp.*,
  517 S.W.3d 849 (Tex. App. 2017) ........................................................................ 14

*Electrostim Med. Servs. v. Health Care Serv.*,
  962 F. Supp. 2d 887, (S.D. Tex. 2013)................................................................... 14

*Elephant Ins. Co. v. Kenyon*,
  644 S.W.3d 137 (Tex. 2022) ................................................................................... 4

*Ervin v. Mann Frankfort Stein & Lipp CPAS, LLP*,
  234 S.W.3d 172 (Tex. App. 2007) ........................................................................ 14

*Flores v. Aon Corp.*,
  2023 IL App (1st) 230140, 242 N.E.3d 340........................................................... 22

*FTC v. Wyndham Worldwide Corp.*,
  799 F.3d 236 (3d Cir. 2015) .......................................................................... 8, 10, 21

*Galaria v. Nationwide Mut. Ins. Co.*,
  663 F. App'x 384 (6th Cir. 2016)........................................................................... 12

*Geske v. PNY Techs., Inc.*,
  503 F. Supp. 3d 687 (N.D. Ill. 2020)..................................................................... 22

*Greater Houston Transp. Co. v. Phillips*,
  801 S.W.2d 523 (Tex. 1990) ............................................................................... 5, 6

*Hall v. Centerspace, LP*,
  2023 WL 3435100 (D. Minn. May 12, 2023) ........................................................ 16

*Hawkins v. Scout Energy Mgmt., LLC*,
  No. 3:24-CV-01545-N, 2025 WL 2244327 (N.D. Tex. Aug. 5, 2025).............................. 11, 23

*Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*,
  480 S.W.2d 607 (Tex. 1972) ............................................................................ 14, 15

*Hays v. Frost & Sullivan, Inc.*,
  2024 WL 4052741 (W.D. Tex. Aug. 16, 2024)................................................... 15, 17

*Houle v. Casillas*,
  594 S.W.3d 524 (Tex. App. El Paso 2019) ............................................................ 16

*Hulse v. Acadian Ambulance Serv. Inc.*,
  No. 6:24-CV-01011, 2025 WL 1453847 (W.D. La. May 19, 2025)....................................... 11

*In re Adobe Sys., Inc. Priv. Litig.*,
   66 F. Supp. 3d 1197 (N.D. Cal. 2014) ................................................................... 22

*In re Ambry Genetics Data Breach Litig.*,
   567 F. Supp. 3d 1130 (C.D. Cal. 2021) .............................................................. 24, 25

*In re Arthur J. Gallagher Data Breach Litig.*,
   631 F. Supp. 3d 573 (N.D. Ill. 2022) ................................................................. 19, 22

*In re Blackbaud, Inc. Customer Data Breach Litig.*,
   567 F. Supp. 3d 667 (D.S.C. 2021) ...................................................................... 9, 13

*In re Cap. One Consumer Data Sec. Breach Litig.*,
   488 F. Supp. 3d 374 (E.D. Va. Sep. 18, 2020) ............................................... 8, 18, 24

*In re Equifax, Inc. Customer Data Sec. Breach Litig.*,
   362 F. Supp. 3d 1295 (N.D. Ga. 2019) ............................................................... 8, 9, 19

*In re Equifax, Inc. Customer Data Sec. Breach Litig.*,
   999 F.3d 1247 (11th Cir. 2021) ............................................................................... 12

*In re ESO Solutions Inc. Breach Litig.*,
   2024 WL 4456703 (W.D. Tex July 30, 2024) ........................................................ 25

*In re Facebook, Inc.*,
   402 F. Supp. 3d 767 (N.D. Cal. 2019) ..................................................................... 6

*In re KP Eng'g, L.P.*,
   63 F.4th 452 (5th Cir. 2023) ................................................................................... 16

*In re LabMD Inc.*,
   2016 WL 4128215 (F.T.C. July 29, 2016) ............................................................... 8

*In re Marriott Int'l, Inc., Consumer Data Sec. Breach Litig.*,
   440 F. Supp. 3d 447 (D. Md. 2020) ....................................................................... 8, 9

*In re Mednax Services, Inc., Customer Data Security Breach Litig.*,
   603 F. Supp. 3d 1183 (S.D. Fla. 2022) .................................................................. 25

*In re Michaels Stores Pin Pad Litig.*,
   830 F. Supp. 2d 518 (N.D. Ill. 2011) ..................................................................... 21

*In re New Era Enters. Inc. Data Incident Litig.*,
   2026 WL 303547 (S.D. Tex. Feb. 4, 2026)………………………………………………….passim

*In re Rutter's Inc. Data Sec. Breach Litig.*,
   511 F. Supp. 3d 514 (M.D. Pa. 2021) ................................................................. 10, 18

iv

*In re Target Corp. Customer Data Sec. Breach Litig.*,
  66 F. Supp. 3d, 1176 (D. Minn. 2014) ............................................................... 15

*In re TJX Companies Retail Sec. Breach Litig.*,
  564 F.3d 489 (1st Cir. 2009) ............................................................................. 21

*In re Unite Here Data Security Incident Litig.*,
  740 F. Supp. 3d 364 (S.D.N.Y. 2024) ............................................................... 24

*In re Waste Mgmt. Data Breach Litig.*,
  2022 WL 561734 (S.D.N.Y. Feb. 24, 2022) ..................................................... 16

*Kluksdahl v. Loyola Univ. New Orleans*,
  2016 WL 4261732 (E.D. La. Aug. 12, 2016) ...................................................... 3

*Lee Lewis Constr., Inc. v. Harrison*,
  70 S.W.3d 778 (Tex. 2001) ................................................................................. 6

*Lee v. Lawrence*,
  2024 WL 1890298 (M.D. La. Apr. 29, 2024) ..................................................... 4

*Leonard v. McMenamins, Inc.*,
  2022 WL 4017674 (W.D. Wash. Sep. 2, 2022)................................................. 24

*Logan v. Marker Grp., Inc.*,
  Civil Action No. 2024 WL 3489208 (S.D. Tex. July 18, 2024).................... 14, 17, 18

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ............................................................................................ 2

*Mackey v. Belden, Inc.*,
  2021 WL 3363174 (E.D. Mo. Aug. 3, 2021)..................................................... 16

*McZeal v. J.P. Morgan Chase Bank, NA*,
  2014 WL 3166715 (E.D. La. July 7, 2014) ......................................................... 3

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007) .......................................................................................... 24

*Morrison v. Quarrington*,
  No. 12-22-00302-CV, 2024 WL 1208504 (Tex. Ct. App. Mar. 13, 2024) ............... 7

*Morrow v. W. Texas Gas, Inc.*,
  2025 WL 2816760 (W.D. Tex. Jan. 9, 2025)............................................... 17, 18

*Mulligan v. QVC, Inc.*,
  382 Ill. App. 3d 620 (2008) .............................................................................. 22

v

*Munger v. Matco Tools Corporation*,
  2026 WL 1223399 (N.D. Ohio May 5, 2026) ........................................................................ 18

*Muniz v. Medtronic Sofamor Danek USA, Inc.*,
  2014 WL 1236314 (W.D. Tex. Mar. 20, 2014) .......................................................................... 3

*Nabors Drilling, U.S.A., Inc. v. Escoto*,
  288 S.W.3d 401 (Tex. 2009) ....................................................................................................... 4

*Nixon v. Mr. Property Mgmt. Co.*,
  690 S.W.2d 546 (Tex. 1985) ..................................................................................................... 13

*Oliver v. Prairie View A&M Univ.*,
  2016 WL 423774 (S.D. Tex. Jan. 13, 2016) ............................................................................ 14

*Perry v. Bay & Bay Transport. Servs., Inc.*,
  650 F. Supp. 3d 743 (D. Minn. Jan. 12, 2023) .................................................................... 8, 15

*Perry v. S.N.*,
  973 S.W.2d 301 (Tex. 1998) ....................................................................................................... 7

*Pub. Affs. Assocs., Inc. v. Rickover*,
  369 U.S. 111 (1962) .................................................................................................................. 24

*Rand v. Travelers Indem Co.*,
  637 F. Supp. 3d 55 (S.D.N.Y. 2022) .......................................................................................... 7

*Remijas v. Neiman Marcus Grp., LLC*,
  794 F.3d 688 (7th Cir. 2015) .................................................................................................... 12

*Roberts v. Healey*,
  991 S.W.2d 873 (Tex. App. Houston [14th Dist.] 1999) ......................................................... 14

*Robinson v. Toyota Motor Credit Corp.*,
  201 Ill. 2d 403, 775 N.E.2d 951 (2002) ................................................................................... 20

*Roden v. Reamer*,
  2026 WL 1078598 (W.D. Tex. Apr. 16, 2026) ....................................................................... 2, 4

*Sackin v. TransPerfect Global, Inc.*,
  278 F. Supp. 3d 739 (S.D.N.Y. 2017) ...................................................................................... 15

*Salahuddin v. Cuomo*,
  861 F.2d 40 (2d Cir. 1988) ......................................................................................................... 3

*Siegel v. Shell Oil Co.*,
  612 F.3d 932 (7th Cir. 2010) .................................................................................................... 20

vi

*Smith v. Am. Pain & Wellness, PLLC,*
  747 F. Supp. 3d 989 (E.D. Tex. 2024) ................................................................ 11, 17

*SmithKline Beecham Corp. v. Doe,*
  903 S.W.2d 347 (Tex. 1995) ........................................................................................ 5

*Torrington Co. v. Stutzman,*
  46 S.W.3d 829 (Tex. 2000) .......................................................................................... 5

*Vanzant v. Hill's Pet Nutrition, Inc.,*
  934 F.3d 730 (7th Cir. 2019) .................................................................................... 20

*Walker v. Harris,*
  924 S.W.2d 375 (Tex. 1996) ..................................................................................... 12

*Walker v. Walker,*
  631 S.W.3d 259 (Tex. App. Houston [14th Dist.] 2020, no pet.) ............................ 17

*Washington v. Smith,*
  2026 WL 820390 (E.D. La. Mar. 25, 2026) ........................................................... 3, 4

*White v. United Network for Organ Sharing,*
  2025 WL 2656044 (E.D. Va. Sep. 16, 2025) ........................................................... 25

*Worix v. MedAssets, Inc.,*
  869 F. Supp. 2d 893 (N.D. Ill. 2012) ................................................................. 20, 22

*Zimmerman v. Highmark, Inc.,*
  780 F. Supp. 3d 588 (W.D. Pa. 2025) ...................................................................... 24

## Statutes

815 ILCS § 530/10 ....................................................................................................... 19

815 ILCS § 530/20 ....................................................................................................... 19

815 Ill. Comp. Stat. Ann. 505/2 ................................................................................. 20

815 Ill. Comp. Stat. § 530/45(a) ................................................................................ 19

Tex. Bus. & Com. Code §§ 521.052–521.053 .............................................................. 5

## Rules

Fed. R. Civ. P. 12 .................................................................................................. 2, 4, 6

Fed. R. Civ. P. 15(a)(2)..................................................................................................... 25

**Other Authorities**

Restatement (Second) of Torts § 323............................................................................. 5

Plaintiffs Ana Ceja, Annette Gifford, Leon Atkinson, Brian Christopher Bieda, Hannah Canejo, and Erica Deberry ("Plaintiffs") hereby submit this opposition to Defendant Gulshan Management Services, Inc. ("Defendant" or "GMS")'s Motion to Dismiss ("Mot.") (ECF No. 35). Plaintiffs have plausibly alleged viable claims for relief. Thus, the Motion should be denied.

## I.      FACTUAL BACKGROUND

Defendant is a privately held company which oversees various gas station and fast-food franchises around the country. *See* Consolidated Class Action Complaint, ECF No. 30 ("CCAC") ¶¶2-3, 35, 38.[1] As part of its business, GMS collects personally identifiable information such as names, Social Security numbers, driver's license numbers, financial account information, credit and/or debit card information, government issued ID numbers (such as passport numbers), contact information, medical information, and health insurance information (collectively, "PII") from customers and/or employees of Defendant or one of its operated franchises. ¶¶35-42.

As a result of GMS's data security deficiencies and failure to protect the PII entrusted to it, cybercriminals were able to infiltrate and deploy malware within Defendant's network between September 17 and 27, 2025 (the "Data Breach"). ¶44. During the attack, cybercriminals "access[ed] servers that hosted personal data and deployed malicious software that encrypted portions of GMS's network." *Id.* The PII of more than 377,000 customers and/or employees of GMS or one of its operated franchises was compromised. Plaintiffs allege that GMS breached its statutory and common law duties by failing to implement reasonable and adequate security measures to prevent, detect, and address the Data Breach. *See* ¶¶328-405.

Due to the Data Breach, cybercriminals obtained everything needed to commit identity theft and wreak havoc on the lives of Plaintiffs and the Class. Indeed, Plaintiffs have already

---

[1] "¶" references refer to the CCAC unless otherwise specified.

suffered actual misuse of their PII, including: (i) posting of their PII to the dark web; (ii) attempts to use their PII to open financial accounts; and (iii) a significant increase in spam calls and texts. ¶¶210, 228-29, 247, 265, 282-84, 300-302. In response, Plaintiffs have been forced to take steps to mitigate the harms of identity theft, have suffered out of pocket losses due to identity theft, have experienced emotional distress and diminution in the value of their PII, and remain at substantial risk of future harms. ¶¶201-310. Such allegations adequately state claims for relief. Accordingly, GMS's Motion should be denied.

## II.      LEGAL STANDARD

Rule 12(b)(6) allows dismissal only if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III.     PLAINTIFFS' COMPLAINT SATISFIES RULE 8 REQUIREMENTS

GMS's argument that Plaintiffs' 92-page CCAC should be dismissed for failing to state a "short and plain statement" under Rule 8 is meritless. *See* Mot. at 4. Dismissal under Rule 8 is appropriate only when a complaint is both unwieldy in length *and* "largely unintelligible." *Roden v. Reamer*, 2026 WL 1078598, at *3 (W.D. Tex. Apr. 16, 2026); *see also Alanis v. U.S. Bank Nat'l Ass'n*, 2024 WL 626622, at *2 (W.D. Tex. Jan. 31, 2024). Notably, GMS's motion does not—and cannot—argue that the Complaint is unintelligible, and its assertion that Plaintiffs have alleged too

2

much is not a recognized ground for dismissal. In the CCAC, six named Plaintiffs bring claims on behalf of a nationwide class and an Illinois subclass arising from a data breach affecting over 377,000 people. The CCAC asserts four causes of action, alleges specific facts about the attack vector, identifies specific security failures, and cites specific industry frameworks that GMS allegedly failed to follow.

GMS overlooks *Washington v. Smith*, 2026 WL 820390, at *3 (E.D. La. Mar. 25, 2026), where the court confronted arguments virtually identical to GMS's, with the defendant citing the same cases (*McZeal v. J.P. Morgan* and *Muniz*). The *Washington* court found those cases "inapt" because the complaints there were "confused, rambling, and incomprehensible," and not merely long. As that court observed, "Defendants cite to no authority that establishes that complaints must be of a certain length." *Id.* at *8. The same is true here, as nowhere in GMS's argument does it point to any Fifth Circuit authority establishing a page limit on complaints.

The cases GMS cites only reinforce the point. Each one was dismissed for unintelligibility, not length, a quality absent here. In *Muniz v. Medtronic Sofamor Danek USA, Inc.*, 2014 WL 1236314 (W.D. Tex. Mar. 20, 2014), only one plaintiff asserted claims and the complaint did not reach case-specific facts until page fifty-nine of seventy-seven pages. In *McZeal v. J.P. Morgan Chase Bank, NA*, 2014 WL 3166715 (E.D. La. July 7, 2014)*, the court "strain[ed] to find any facts underlying the dispute" amid "impenetrably dense, jargon-laden" prose. *McZeal*, slip op. at 11–12. In *Kluksdahl v. Loyola Univ. New Orleans*, a single plaintiff filed 130 pages of "rambling, scattered arguments." 2016 WL 4261732, at *2 (E.D. La. Aug. 12, 2016).

The CCAC here is logically organized, progresses sequentially from facts to legal claims, identifies a discrete defendant, and states specific theories of liability. It is not "confused, ambiguous, vague, or otherwise unintelligible," as GMS wrongly asserts. *See* Mot. at 3.

3

GMS's subsidiary arguments are equally unavailing. Its invocation of *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988), for the "unjustified burden" standard fails for the same reason. GMS's own 25-page response proves it was never "forced to select the relevant material from a mass of verbiage." Mot. at 3. Defendant's shotgun-pleading objection to Plaintiffs' incorporation-by-reference paragraphs fares no better. The Fifth Circuit has established that "a complaint is not a shotgun pleading 'simply because it incorporates by reference previous allegations,'" but only when it "make[s] no attempt to lay out which conduct constitutes the violation alleged." *Lee v. Lawrence*, 2024 WL 1890298, at *1 (M.D. La. Apr. 29, 2024); *see also Washington*, 2026 WL 820390, at *3. Here, each cause of action is clearly delineated with distinct elements and factual bases. Finally, GMS's characterization of the Complaint's cybersecurity background as "immaterial" is contradicted by its own motion. Defendant cannot argue that the Complaint fails to identify specific misconduct (*see* Mot. at 8–10) while simultaneously arguing that its specific allegations of security failures are extraneous.

Nevertheless, even if the Court perceived some lack of concision, dismissal would still be inappropriate. Both unwieldy length and unintelligibility must be present. *Roden*, 2026 WL 1078598, at *3. The proper course would be a more definite statement under Rule 12(e) or leave to amend. Because the Complaint provides clear notice of Plaintiffs' claims and their factual bases, it satisfies Rule 8, and GMS's motion to dismiss on this ground should be denied.

## IV.    PLAINTIFFS' NEGLIGENCE ALLEGATIONS ARE SUFFICIENT

### A.  Plaintiffs Adequately Allege Defendant Owed Them a Duty of Care

To state a claim for negligence, Plaintiffs must allege that the Defendant owed them a duty, that the duty was breached, and that the breach of that duty caused them harm. *Elephant Ins. Co. v. Kenyon*, 644 S.W.3d 137, 144 (Tex. 2022); *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d

4

401, 404 (Tex. 2009). Under Texas law, "[t]he foremost and dominant consideration" in determining the existence of a duty is the "risk, foreseeability, and likelihood of injury." *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). Texas courts additionally consider "the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden on the defendant." *Id*. Plaintiffs plausibly allege that Defendant collected, stored, and maintained Plaintiffs' PII, exercised exclusive control over that information, and failed to implement reasonable safeguards despite the well-known and foreseeable risk of data breaches and identity theft. ¶¶40-45, 47, 49, 54, 60-63, 70-83, 105, 128-131. These allegations sufficiently plead a duty of reasonable care.

Defendant's assertion that Texas recognizes "no general common-law duty" to safeguard personal information overstates the standard and ignores that duties may arise from a defendant's affirmative conduct. Mot. at 6. Texas law recognizes that "one who undertakes to provide services to another . . . has a duty to exercise reasonable care in performing those services." *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 838 (Tex. 2000); *see also* Restatement (Second) of Torts § 323. Plaintiffs do not allege a generalized abstract duty, rather, Plaintiffs allege that GMS affirmatively collected and retained PII, represented that such information would be safeguarded, and maintained exclusive possession and control over it. ¶¶40-42, 72-82. Having undertaken the collection and retention of Plaintiffs' PII for its own business purposes, Defendant plausibly owed a duty to exercise reasonable care in protecting the PII from foreseeable misuse.

GMS also overstates the scope and effect of Texas statutory law. The existence of statutory obligations concerning data security does not eliminate parallel common-law duties absent clear legislative intent. *See SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 355 (Tex. 1995) ("A duty may arise under common law even when statutes also impose obligations."). GMS identifies

5

no authority holding that Tex. Bus. & Com. Code §§ 521.052–521.053 preempts or abrogates common-law negligence claims. Indeed, the statutory framework reflects legislative recognition that the unauthorized disclosure of PII creates a foreseeable and substantial risk of harm.

GMS's reliance on cases rejecting "special relationships" is similarly misplaced. Mot. at 6-7. Plaintiffs do not rely solely on a generalized customer or employee relationship. Plaintiffs allege that GMS required, collected, stored, and controlled their PII. Texas courts recognize that duty determinations are "a function of several interrelated factors," including foreseeability and the relationship between the parties. *Phillips*, 801 S.W.2d at 525. Whether GMS's relationship with Plaintiffs and its affirmative conduct support the full scope of the duty alleged presents a fact-intensive inquiry inappropriate for resolution on under Rule 12. *See In re Facebook, Inc.*, 402 F. Supp. 3d 767, 799–800 (N.D. Cal. 2019) (plaintiffs plausibly alleged duty where defendant collected and controlled users' personal information and users reasonably relied on defendant to safeguard it).

Finally, GMS conflates the existence of a duty with the standard of care. Plaintiffs' allegations concerning industry standards, cybersecurity practices, and reasonable safeguards are relevant to breach, not whether a duty plausibly exists. *See Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 783 (Tex. 2001) ("The components of a negligence cause of action are the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach.").

Plaintiffs have sufficiently pled a foreseeable risk that could have been prevented by GMS's exercise of ordinary care. ¶¶52-54, 61-63, 65-68, 96-101. Data breaches are common to companies like Defendant due to the very type of information they collect and keep. ¶¶15-17, 62, 80, 84-85. Victims of data breaches, including Plaintiffs, are highly likely to experience injury due to the value of PII to hackers. ¶¶148-156. Defendant cannot plausibly claim it was unaware that

6

allowing criminals access to PII would cause harm.

GMS is in the best position to ensure reasonable data-protection and data-privacy practices. Courts have found that since Plaintiffs have no such control over the security of the data entrusted to third parties, the consequence of placing that burden on Defendant is not too high. *See Rand v. Travelers Indem Co.,* 637 F. Supp. 3d 55, 69 (S.D.N.Y. 2022) (finding special relationship in data breach case where defendant is in "the best position to protect against the risk of harm").

Accepting Plaintiffs' allegations as true and drawing all reasonable inferences in Plaintiffs' favor, Plaintiffs have plausibly alleged that Defendant owed and breached a duty of reasonable care in safeguarding Plaintiffs' PII. Thus, Defendant's motion should be denied.

### B.  Plaintiffs Identify Statutory Frameworks to Allege a Standard of Duty

While Texas law does not recognize negligence *per se* as a standalone claim, a negligence claim can be based on a violation of federal and state regulations. *Morrison v. Quarrington*, No. 12-22-00302-CV, 2024 WL 1208504, at *9 (Tex. Ct. App. Mar. 13, 2024) ("Negligence *per se* is not a separate cause of action that exists independently of a common-law negligence claim. Rather, negligence *per se* is one method of proving a breach of duty, which is a necessary element in any negligence cause of action.") (citation omitted). "To prove a cause of action for negligence *per se*, the plaintiff must establish that she belongs to the class of persons the statute was designed to protect, and her injury is of the type the statute was designed to prevent." *Id.* (citing *Perry v. S.N.*, 973 S.W.2d 301, 305 (Tex. 1998)). Plaintiffs satisfy these elements.

GMS misrepresents Plaintiffs' allegations to create a strawman—that Plaintiffs' negligence claim rests solely on a negligence *per se* theory—and then attempts to knock down the strawman by implying the inclusion of the FTCA in the CCAC overrides the actual pled causes of action. Mot. at 7. Plaintiffs' inclusion of GMS's violations of the FTCA, as well as the Illinois

7

Consumer Fraud and Deceptive Business Practices Act ("ICFA"), are not intended to demonstrate that Plaintiffs have sufficiently met one of the elements of negligence *per se*, but rather to establish an applicable standard of care. *See* ¶¶122-130, 396-404. This is clear from the fact that the CCAC does not assert a standalone claim for negligence *per se*, but rather only states a claim for common law negligence. This Court recently acknowledged in *In re New Era Enters. Inc. Data Incident Litig.*, that federal law may be used in precisely this manner to provide evidence of the relevant standard of care. 2026 WL 303547, at *12 (S.D. Tex. Feb. 4, 2026). The FTCA sets forth a positive and definite standard of care that is sufficient to state a claim for negligence *per se*. *Id.* ¶¶ 122-130; *see also Perry v. Bay & Bay Transport. Servs., Inc.*, 650 F. Supp. 3d 743, 756 (D. Minn. Jan. 12, 2023) ("Section 5 of the FTCA is not too amorphous and vague to establish a fixed standard of care."). In addition, the duties created under this statute have been held to be enforceable.[2]

### C.  Plaintiffs' Allegations Plausibly Plead Defendant's Breach of Duty

GMS wrongly reframes Plaintiffs' negligence claim as one based solely on the "fact of the data breach" while ignoring the detailed allegations regarding GMS's collection, storage, protection, and disclosure of Plaintiffs' PII. *See* Mot. at 8. Plaintiffs do not allege strict liability as GMS suggests. *Id*. Rather, Plaintiffs plausibly allege that GMS failed to implement reasonable safeguards despite the well-known and foreseeable risk of cyberattacks and unauthorized disclosure of sensitive data. ¶¶14-17, 52-54, 61-63, 74-81, 84-85, 96-101, 122-144. At the pleading stage, Plaintiffs are not required to prove the technical mechanism of GMS's security failures before obtaining discovery uniquely within GMS's possession and control. *See Twombly*, 550 U.S.

---

[2] Numerous courts across the country have considered whether the FTCA creates enforceable duties and found that it does. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 241, 247 (3d Cir. 2015); *In re LabMD Inc.*, 2016 WL 4128215, at *32 (F.T.C. July 29, 2016); *In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d at 407; *In re Marriott*, 440 F. Supp. 3d at 479-482 (multiple courts have found that plaintiffs whose information was allegedly compromised by a data breach fit within the class of plaintiffs sought to be protected from the type of harm proscribed by the FTCA or other similar statutes); *In re Equifax, Inc. Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1327 (N.D. Ga. 2019).

at 555 (plausibility standard does not require "detailed factual allegations"). Similar allegations have been held sufficient to state a negligence claim by district courts within the Fifth Circuit. *See Cabezas v. Mr. Cooper Grp. Inc.*, 2025 WL 2053287, at *11 (N.D. Tex. July 22, 2025).

GMS's argument wrongly asserts that Plaintiffs must plead the exact security deficiency, internal policy failure, or technical vulnerability that caused the Data Breach before discovery has occurred. Courts routinely reject such arguments in data breach cases because the information concerning a defendant's security architecture, safeguards, monitoring, access controls, patch management, employee protocols, and incident response procedures resides almost exclusively with the defendant. *See In re Equifax, Inc. Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1327–28 (N.D. Ga. 2019) (holding plaintiffs plausibly alleged unreasonable security practices despite limited access to internal cybersecurity details pre-discovery); *In re Marriott Int'l, Inc., Consumer Data Sec. Breach Litig.,* 440 F. Supp. 3d 447, 474–75 (D. Md. 2020) (same).

Plaintiffs do not merely allege a breach and infer negligence in a vacuum. Plaintiffs allege that GMS collected and maintained PII, knew such was a valuable target for cybercriminals, represented that it would safeguard that PII, and nevertheless failed to maintain reasonable security measures consistent with widely recognized industry practices and guidance. ¶¶61-62, 64-71. Plaintiffs further allege that cybercriminals successfully accessed and/or exfiltrated PII entrusted to GMS's exclusive control. ¶¶72-82. These allegations plausibly support an inference that Defendant's safeguards were inadequate under the circumstances. *See In re Blackbaud, Inc. Customer Data Breach Litig.*, 567 F. Supp. 3d 667, 683–84 (D.S.C. 2021) (finding allegations of inadequate cybersecurity measures sufficient to plead negligence where plaintiffs alleged defendant failed to implement reasonable safeguards against foreseeable cyberattacks).

GMS's reliance on *Waste Management* is misplaced. Plaintiffs do not contend that *any* data

9

breach automatically establishes negligence. Rather, Plaintiffs allege that GMS failed to employ reasonable safeguards despite the foreseeable risk of unauthorized access to PII. ¶¶72-82, 84-104. Whether Defendant's security measures were reasonable under the circumstances is a fact-intensive inquiry not suitable for resolution on a Rule 12 motion. S*ee In re Rutter's Inc. Data Sec. Breach Litig.*, 511 F. Supp. 3d 514, 532–33 (M.D. Pa. 2021) (reasonableness of cybersecurity safeguards generally presents factual issues inappropriate for dismissal at pleading stage).

GMS also mischaracterizes Plaintiffs' allegations regarding FTC guidance, NIST frameworks, and industry standards. Mot. at 9. Plaintiffs are not required at the pleading stage to identify every precise technical safeguard GMS failed to implement or map each failure to a specific subpart of a particular framework. The CCAC plausibly alleges that GMS failed to implement reasonable safeguards consistent with widely recognized cybersecurity standards and practices. Industry frameworks and regulatory guidance are relevant to demonstrating the standard of reasonable care and the foreseeability of harm. ¶¶60-63, 65-70, 122-140. *See FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 255–59 (3d Cir. 2015) (recognizing FTC cybersecurity guidance and industry standards as informing reasonable data security practices).

Moreover, GMS's argument improperly seeks to require Plaintiffs to plead technical cybersecurity details with particularity prior to discovery. That is not the standard. *See Iqbal*, 556 U.S. at 678 (Rule 8 requires plausibility, not probability). Plaintiffs plausibly allege that GMS failed to use reasonable safeguards to protect PII entrusted to it, that cybercriminals compromised GMS's systems, and that Plaintiffs suffered resulting harm. That is sufficient.

GMS's argument regarding breach notification likewise fails. Plaintiffs allege that GMS's notice and disclosures were deficient, incomplete, and failed to provide sufficient information regarding the Data Breach to permit affected individuals to adequately assess their risk and take

10

protective action. Whether Defendant's notice and response efforts were reasonable presents factual questions inappropriate for resolution at the pleading stage.

Finally, GMS's invocation of the sophistication of modern cybercriminals and increasing frequency of data breaches does not entitle it to dismissal. Mot. at 10. The increasing prevalence and sophistication of cyberattacks strengthens—not weakens—the foreseeability of harm and the need for reasonable cybersecurity safeguards. Plaintiffs plausibly allege that GMS knew or should have known of the significant risk posed by cybercriminals targeting PII and nevertheless failed to implement adequate safeguards. Accepting Plaintiffs' allegations as true and drawing all reasonable inferences in Plaintiffs' favor, Plaintiffs have plausibly alleged breach of duty.

### D. Plaintiffs Sufficiently Plead Actual Injury and Requisite Causation

GMS's causation and injury arguments improperly ask the Court to resolve factual disputes, weigh competing inferences, and impose a heightened pleading burden inconsistent with the governing Rule 8 and Rule 12 standards. Accepting Plaintiffs' allegations as true and drawing all reasonable inferences in their favor, Plaintiffs plausibly allege both concrete injury and causation sufficient to state a negligence claim. Moreover, courts in the Fifth Circuit have allowed plaintiffs to pursue negligence claims on the basis that they have alleged a sufficient risk of future injury to establish standing (which Defendant notably has elected to not contest here).[3] Plaintiffs' allegations here far exceed this standard.

As an initial matter, GMS incorrectly characterizes Plaintiffs' alleged injuries as merely speculative or hypothetical. Mot. at 11. This ignores Plaintiffs' allegations that their PII was

---

[3] *See, e.g., Hawkins v. Scout Energy Mgmt., LLC*, No. 3:24-CV-01545-N, 2025 WL 2244327, at *5, *8 (N.D. Tex. Aug. 5, 2025); *Cabezas,* 2025 WL 2053287, at *7, *11; *Castillo v. Berry Bros Gen. Contractors Inc.*, No. 6:24-CV-01723, 2025 WL 1062091, at *5 (W.D. La. Apr. 8, 2025); *Hulse v. Acadian Ambulance Serv. Inc.*, No. 6:24-CV-01011, 2025 WL 1453847, at *7, *11–12 (W.D. La. May 19, 2025); *Smith v. Am. Pain & Wellness, PLLC*, 747 F. Supp. 3d 989, 1002–04 (E.D. Tex. 2024); *Bruno*, 754 F. Supp. 3d at 749.

actually accessed, exposed, compromised, and/or exfiltrated in the Data Breach. ¶¶10-17, 40-55, 145-310. Courts routinely recognize that the unauthorized disclosure of PII constitutes a concrete injury, particularly where the exposed information creates a substantial risk of identity theft, fraud, or misuse. *See Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 388–89 (6th Cir. 2016) (increased risk of identity theft following data breach constituted concrete injury where hackers intentionally targeted personal information); *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 693–94 (7th Cir. 2015) ("Why else would hackers break into a store's database and steal consumers' private information?").

Plaintiffs additionally allege present injuries including loss of privacy, diminished value of their PII, time spent mitigating the effects of the breach, monitoring accounts, addressing fraud risks, and taking protective measures necessitated by Defendant's conduct. ¶¶145-310. Such mitigation costs and lost time are independently cognizable injuries. *See In re Equifax, Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1263–64 (11th Cir. 2021) (time and money mitigating identity theft risk constituted concrete injury); *Attias v. CareFirst, Inc.*, 865 F.3d 620, 626–29 (D.C. Cir. 2017) (substantial risk of identity theft and mitigation efforts sufficient).

GMS's reliance on *Clapper* is misplaced. Unlike the speculative future concerns in *Clapper*, Plaintiffs allege a confirmed Data Breach involving unauthorized access to PII entrusted to GMS. Courts repeatedly distinguish *Clapper* in the data breach context where plaintiffs allege actual compromise of PII. *See, e.g., Galaria*, 663 F. App'x at 388; *Remijas*, 794 F.3d at 693–94.

GMS's causation arguments likewise fail because Plaintiffs plausibly allege that GMS's inadequate safeguards enabled cybercriminals to access Plaintiffs' PII and thereby caused Plaintiffs' injuries. GMS attempts to characterize cybercriminal conduct as a superseding cause that defeats negligence liability. Texas law recognizes that intervening criminal conduct does not

automatically sever proximate causation where the criminal conduct itself was foreseeable. *See Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996) ("Foreseeability requires only that the general danger, not the exact sequence of events that produced the harm, be foreseeable."); *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 550–51 (Tex. 1985).

GMS's own arguments acknowledge the foreseeable nature of cyberattacks. The increasing prevalence of data breaches does not defeat foreseeability; it reinforces it. Mot. at 10. Plaintiffs plausibly allege that GMS collected and retained PII despite knowing that such information represented a valuable target for cybercriminals. Whether GMS's conduct created a foreseeable risk of criminal intrusion presents a factual issue not suitable for resolution on a motion to dismiss.

GMS's reliance on *Barton* is misplaced. *Barton* involved premises liability principles tied to localized criminal conduct and business-specific crime patterns, not cybersecurity obligations arising from the collection and storage of sensitive electronic information. Cyberattacks targeting entities that store PII are fundamentally different from isolated physical crimes occurring on business premises. Plaintiffs plausibly allege that entities maintaining large quantities of sensitive personal information face a foreseeable risk of cyberattack by virtue of the nature of the data itself.

GMS also improperly seeks to impose a heightened traceability standard. Mot. at 11. Plaintiffs are not required, prior to discovery, to conclusively exclude all other possible sources of compromise or prove with certainty that every misuse of their information originated solely from this Data Breach. *See In re Blackbaud, Inc. Customer Data Breach Litig.*, 567 F. Supp. 3d 667, 682–83 (D.S.C. 2021) (generally rejecting argument that plaintiffs must conclusively trace misuse to specific breach at pleading stage). Plaintiffs plausibly allege that GMS suffered a confirmed breach involving Plaintiffs' PII, that unauthorized actors accessed or acquired that information, and that Plaintiffs thereafter faced a substantial and ongoing risk of misuse and related injuries.

13

That is sufficient under Rule 8.

GMS's argument also improperly asks the Court to draw inferences against Plaintiffs. *Id* at 11-12. At the pleading stage, the Court must accept Plaintiffs' allegations as true and determine only whether Plaintiffs plausibly state a claim for relief. *Iqbal*, 556 U.S. at 678. Plaintiffs have done so here by plausibly alleging that GMS's inadequate security measures allowed unauthorized actors to compromise Plaintiffs' PII, resulting in concrete injuries and foreseeable harm.

Accordingly, Plaintiffs have sufficiently alleged injury and causation, and Defendant's motion to dismiss the negligence claim should be denied.

## V.  <u>PLAINTIFFS SUFFICIENTLY ALLEGE BREACH OF IMPLIED CONTRACT</u>

Under Texas law, a breach of contract claim has five elements: "(1) offer; (2) acceptance; (3) a meeting of the minds; (4) consent between the parties; and (5) execution and delivery of the contract with the intent that it be binding." *Oliver v. Prairie View A&M Univ.*, 2016 WL 423774, at *5 (S.D. Tex. Jan. 13, 2016) (citing *Electrostim Med. Servs. v. Health Care Serv.*, 962 F. Supp. 2d 887, 899, (S.D. Tex. 2013)). A contract is implied when the contract's terms arise from the actions and conduct of the parties. *E-Learning LLC v. AT&T Corp.*, 517 S.W.3d 849, 858 (Tex. App. 2017) (citing *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972). Texas courts evaluate whether an implied contract was formed by considering whether the "objective standard of the parties' action" demonstrates a mutual intention to contract. *Ervin v. Mann Frankfort Stein & Lipp CPAS, LLP*, 234 S.W.3d 172, 183 (Tex. App. 2007) (citing *Roberts v. Healey*, 991 S.W.2d 873, 880 (Tex. App. Houston [14th Dist.] 1999). Here, GMS contends that Plaintiffs failed to properly allege the existence of an implied contract to protect Plaintiffs' PII. Specifically, GMS states that there were no allegations of actions between the parties that could imply a meeting of the minds. This is not true.

14

When alleging an implied contract, "the element of mutual assent can be inferred from the circumstances of the transaction." *Logan v. Marker Grp., Inc.*, Civil Action No. 2024 WL 3489208, at *8 (S.D. Tex. July 18, 2024) (citing *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972)). Plaintiffs alleged that an implied contract was created. ¶¶367-369. As a condition of receiving employment or services from GMS, Plaintiffs performed their obligation of providing GMS with their PII. ¶¶10, 72, 371. Plaintiffs provided their PII based on GMS' agreement to safeguard that PII in accordance with its own internal privacy policies as well as state and federal law. ¶¶41, 78. Implicit in the parties' agreement was that GMS would adequately protect Plaintiffs' PII and notify them promptly in the event their PII was breached or stolen. ¶¶368-370. As a result, Defendant's failure to protect Plaintiffs' PII caused the Data Breach and led to the disclosure of their information. ¶374.

The provision of PII by an employee to their employer is accompanied by the implicit understanding that it will be reasonably maintained as confidential. *See Hays v. Frost & Sullivan, Inc.*, 2024 WL 4052741, at *10 (W.D. Tex. Aug. 16, 2024) (denying motion to dismiss breach of implied contract claim where PII was provided as a condition of employment); *see also Perry v. Bay & Bay Transportation Servs., Inc.*, 650 F. Supp. 3d 743, 757 (D. Minn. 2023) ("Bay & Bay provided consideration by promising to consider Perry for employment, while Perry provided consideration by providing valuable property, his PII. By mandating this exchange of information, it is plausible that Bay & Bay made an implied promise to keep the PII secure."); *Sackin v. TransPerfect Global, Inc.*, 278 F. Supp. 3d 739, 750 (S.D.N.Y. 2017) ("Transperfect required and obtained the PII as part of the employment relationship, evincing an implicit promise by TransPerfect to act reasonably to keep its employees' PII safe.").

Further, numerous courts have declined to dismiss breach of implied contract claims under

15

similar facts, finding that "the terms of the alleged implied contract is a factual question that a jury must determine." *In re Target Corp. Customer Data Sec. Breach Litig.*, 66 F. Supp. 3d, 1176-77 (D. Minn. 2014); *see also Anderson v. Hannaford Bros. Co.*, 659 F.3d 151, 159 (1st Cir. 2011) ("A jury could reasonably conclude, therefore, that an implicit agreement to safeguard the data is necessary to effectuate the contract."); *In re Waste Mgmt. Data Breach Litig.*, 2022 WL 561734, at *4 (S.D.N.Y. Feb. 24, 2022) ("Large data breaches regularly occur, and their frequency is only increasing. When an employer requires an employee to submit their sensitive personal information, the employee therefore has a reasonable expectation that the employer will take reasonable care not to place their personal data at unnecessary risk of exposure.").

In any event, "it is difficult to imagine how, in our day and age of data and identity theft, the mandatory receipt of Social Security numbers or other sensitive personal information would not imply the recipient's assent to protect the information sufficiently." *Castillo v. Seagate Tech., LLC*, 2016 WL 9280242, at *9 (N.D. Cal. Sept. 14, 2016); *see also Hall v. Centerspace, LP*, 2023 WL 3435100, at *5 (D. Minn. May 12, 2023) ("requiring someone to provide a Social Security number and other sensitive personal information as part of a transaction carries with it the recipient's implied agreement to reasonably safeguard it") (citing *Mackey v. Belden, Inc.*, 2021 WL 3363174, at *9 (E.D. Mo. Aug. 3, 2021)). Plaintiffs have met their pleading burden.

## VI.    PLAINTIFFS SUFFICIENTLY ALLEGE UNJUST ENRICHMENT

Under Texas law, unjust enrichment "is an equitable concept that arises in situations in which another person has wrongfully secured a benefit or has passively received one in which it would be unconscionable to retain." *Houle v. Casillas*, 594 S.W.3d 524, 554 (Tex. App. El Paso 2019); *see In re KP Eng'g, L.P.*, 63 F.4th 452, 457 (5th Cir. 2023) ("If a plaintiff's unjust enrichment claim is based on passive receipt of a benefit that would be unconscionable to retain,

16

then the plaintiff does not need to plead or prove that the defendant acted wrongfully."). A claim for unjust enrichment "does not depend on the existence of a wrong" and instead arises when a party retains benefits under circumstances where it would be unjust to retain them. *Walker v. Walker*, 631 S.W.3d 259, 266 (Tex. App. Houston [14th Dist.] 2020, no pet.) (citation omitted).[4]

GMS primarily challenges Plaintiffs' unjust enrichment claim by arguing that the CCAC fails to allege that Plaintiffs conferred a benefit on Defendant. Mot. at 17. Plaintiffs have alleged that they provided a benefit to GMS in the form of payment for services and/or through their labor, without which GMS could not generate profits. *See* ¶¶5-6, 39-40, 72-73, 381-384. Multiple courts within the Fifth Circuit—including this Court—have found that plaintiffs stated a claim for unjust enrichment under similar facts. *See, e.g., In re New Era Enters. Inc. Data Incident Litig.*, 2026 WL 303547, at *14 (S.D. Tex. Feb. 4, 2026) (declining to dismiss unjust enrichment claim in data breach case with mixed class of customer and employee plaintiffs); *Morrow v. W. Texas Gas, Inc.,* 2025 WL 2816760, at *15 (W.D. Tex. Jan. 9, 2025) ("Defendant receives monetary benefits from its customers from the revenue it makes selling a product, and that without its employees [Defendant] could not generate revenue."); *Smith v. Am. Pain & Wellness, PLLC*, 747 F. Supp. 3d 989, 1003 (E.D. Tex. 2024) (allowing unjust enrichment claim based on money generated from services); *Hays v. Frost & Sullivan, Inc.*, 2024 WL 4052741, at *13 (W.D. Tex. Aug. 16, 2024), *report and recommendation adopted,* No. CV SA-23-CA-1490-FB, 2024 WL 4047166 (W.D. Tex. Sept. 4, 2024) (finding unjust enrichment adequately pled where plaintiffs alleged that the defendant "'enriched itself by saving the costs they reasonably should have expended' on such measures and avoided its data-security obligations at Plaintiff's and the class members' expense.").

---

[4] Defendant mischaracterizes Plaintiffs' unjust enrichment allegations as hinging on wrongdoing such that Plaintiffs are required to plead fraud, duress, or the taking of undue advantage. *See* Mot. at 17 n.7. But this ignores Plaintiffs' actual allegations, which are premised on the unjust retention of money that should have been allocated to reasonable data security. *See* CCAC ¶¶ 379-394.

17

The cases cited by GMS are inapposite. In *Logan v. Marker Grp., Inc.*, 2024 WL 3489208 (S.D. Tex. July 18, 2024), the only benefit plaintiffs alleged they conferred on the defendant was their information with no separate benefit. *Id.* at *11 ("With nothing else to serve as consideration for the safe keeping of such information, Harris conferred no benefit on Marker Group."). In *Bruno v. Donohoe as Tr. of Texas Med. Liab. Tr.*, 754 F. Supp. 3d 737 (W.D. Tex. 2024), the plaintiff provided his information to a physician who then separately provided that information to the defendant for medical malpractice insurance; thus, the court found that the "[p]laintiff did not confer any additional benefits upon [the malpractice insurer]." *Id.* at 750.[5] Unlike these cases, Plaintiffs allege they conferred payments and/or labor. ¶¶381-384.

In *Morrow,* the Western District of Texas recently found sufficient allegations substantially similar to those alleged by Plaintiffs and thereby rejected the very argument asserted by Defendant:

> Morrow alleges that he and Class Members ***conferred a benefit on Defendant in the form of employment and money for service***. Although they do not clarify exactly what part of those benefits should have been directed to data privacy measures, several courts have declined to dismiss claims of unjust enrichment based on this failure alone.

2025 WL 2816760, at *15 (emphasis added) (citing cases). This Court likewise recently declined to dismiss an unjust enrichment claim brought by customers and employees following a data breach, finding that the allegation of "passive receipt of a benefit that would be unconscionable to retain" was sufficient. *In re New Era*, 2026 WL 303547, at *14. Plaintiffs have pleaded nearly identical allegations to those considered by the courts in *Morrow* and *New Era*.[6]

---

[5] *Burlington N. R. Co. v. Sw. Elec. Power Co.*, 925 S.W.2d 92, 95 (Tex. App. 1996), *aff'd*, 966 S.W.2d 467 (Tex. 1998) is also completely inapposite. *Burlington* was not a data breach case, and the basis of the decision was that the dispute was governed fully by the terms of the contract made between the parties—not on the merits of the unjust enrichment claim itself. *Id.* at 97-98.

[6] *See also Andrew Munger v. Matco Tools Corporation*, 2026 WL 1223399, at *7 (N.D. Ohio May 5, 2026) (allowing unjust enrichment claim to proceed where customer and employee plaintiffs " allege[d] that retaining the PII was beneficial as it allowed Defendant to sell its products, employ people, and because the PII is valuable."); *Bowen v.*

18

Accordingly, the Court should allow Plaintiffs' unjust enrichment claim to proceed.

## VII.    PLAINTIFFS ADEQUATELY ALLEGE A VIOLATION OF THE ICFA

Defendant next attempts to secure dismissal of Plaintiffs Ceja's, Gifford's, and Bieda's ICFA claim by arguing that the ICFA has no extraterritorial application, that Plaintiffs have failed to satisfy the pleading requirements of F.R.C.P. 9(b), and that they have not adequately alleged damages within the meaning of the ICFA. Mot. at 18-23. As set forth below, Defendant errs and Plaintiffs' claims under the ICFA are properly before the Court.

### A.  Plaintiffs Have Established a Nexus with the State of Illinois

The Illinois ICFA applies extraterritorially when "the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Avery v. State Farm Mut. Auto Ins. Co.*, 216 Ill.2d 100, 296 (2005). There is no hard rule to determine the ICFA's extraterritorial application, each case must be considered on its facts. *BCBSM, Inc. v. Walgreen Co.*, 512 F. Supp. 3d 837, 856 (N.D. Ill. 2021). Here, Plaintiffs are, and at all relevant times have been, residents of Illinois. ¶¶28, 29, 31. Thus, it can be plausibly inferred that the Illinois Plaintiffs interacted and transacted with GMS primarily and substantially in Illinois where they availed themselves of employment or services offered by GMS. A violation of the Illinois Personal Information Protection Act ("IPIPA"), is a violation of the ICFA,[7] and it "requires data collectors to 'implement and maintain reasonable security measures to protect' records from 'unauthorized access, acquisition, destruction, use, modification, or disclosure.'" 815 Ill. Comp. Stat. § 530/45(a).[8] *In re*

---

*Paxton Media Group, LLC*, 2022 WL 4110319, at *4 (W.D. Ky. Sep. 8, 2022) (finding employee plaintiffs stated a claim for unjust enrichment); *In re Equifax,* 362 F. Supp. 3d at 1330 (finding consumer plaintiffs stated a claim for unjust enrichment); *In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d at 412 (finding consumer plaintiffs stated a claim for unjust enrichment); *In re Rutter's Inc. Data Sec. Breach Litig.*, 511 F. Supp. 3d 514, 539-540 (M.D. Pa. Jan. 5, 2021) (finding consumer plaintiffs stated a claim for unjust enrichment).

[7] *See* 815 ILCS § 530/20 ("A violation of this Act constitutes an unlawful practice under the Consumer Fraud and Deceptive Business Practices Act.")

[8] *See* CCAC ¶ 397(c) citing to IPIPA, 815 ILCS § 530/10.

*Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 590 (N.D. Ill. 2022). Thus, regardless of whether the transaction leading to the Data Breach occurred within Illinois, GMS nevertheless had a statutory duty to implement reasonable data security measures to protect Illinois Plaintiffs' PII and its failure to do so is a violation of the ICFA.

### B.  Unfair Prong of the ICFA Does Not Require that Plaintiffs Satisfy FRCP 9(b)

Next, Defendant errs in demanding that Plaintiffs' ICFA claim must satisfy the heightened pleading requirements of FRCP 9(b). The ICFA prohibits both unfair and deceptive conduct, and a plaintiff alleging unfair conduct under the ICFA need not also allege that the conduct is deceptive. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010); *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739 (7th Cir. 2019) ("[U]nfair-practices claim has no fraud element and therefore is not subject to a heightened pleading standard."). To determine whether conduct violates the unfair prong of the ICFA, the Illinois Supreme Court has identified three pertinent factors, not all of which need to be satisfied, including whether the defendant's conduct: (1) violates public policy; (2) is so oppressive that the consumer has little choice but to submit; and (3) causes consumers substantial injury. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 418, 775 N.E.2d 951, 961 (2002). With respect to whether a consumer is "substantially injured" by an unfair practice, Illinois requires that it "(1) be substantial; (2) not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and (3) be an injury that consumers themselves could not reasonably have avoided." *Siegel*, 612 F.3d at 935.

The ICFA instructs courts examining allegations of unfair practices to rely on "the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act. *Robinson*, 201 Ill. 2d at 417 (citing to 815 Ill. Comp. Stat. Ann. 505/2); *see also Worix v. MedAssets, Inc.*, 869 F. Supp. 2d 893, 900 (N.D. Ill. 2012) (noting

20

that the failure to implement data security safeguards is an unfair practice under the ICFA) (citing to *In re TJX Companies Retail Sec. Breach Litig.*, 564 F.3d 489, 497 (1st Cir. 2009) ("Where, as here, a substantial body of FTC complaints and consent decrees focus on a class of conduct, it is hard to see why a court would choose flatly to ignore it.")); *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 526 (N.D. Ill. 2011) ("Plaintiffs' allegations show that Michaels ignored its obligation to implement procedures and practices preventing the criminal conduct. Plaintiffs thus sufficiently allege that Michaels engaged in an unfair practice under the ICFA."). Additionally, to the extent GMS contests that Plaintiffs' allegations of GMS's violation of the FTC Act are insufficient, it ignores the wealth of precedent stating that "Section 5 of the FTC Act is a statute that creates enforceable duties. Moreover, this duty is ascertainable as it relates to data breach cases based on the text of the statute and a body of precedent interpreting the statute and applying it to the data beach context." *F.T.C. v. Wyndham Worldwide Corp.* 799 F.3d 236, 255 (3d Cir. 2015); *In re TJX*, 564 F.3d at 498–99 (applying FTC precedent for scope of duty under Massachusetts law based on Section 5 of FTC act). Plaintiffs have also identified the particular data security standards that GMS violated, including "by enabling spam filters, training employees to detect and report phishing attempts, training employees not to provide access credentials in response to unsolicited requests, enabling multi-factor authentication to verify the credentials of individuals attempting to access sensitive information, and monitoring networks to detect unauthorized access from third party networks and the transfer of large volumes of data to outside networks" and encrypting or deleting data that it was no longer required to maintain. ¶¶62, 76-77.

Allegations that a defendant violated the unfair prong of the ICFA are sufficient where they allege that the conduct violates public policy, is oppressive or coercive, and results in an unavoidable injury to a consumer and one which does not produce countervailing benefits to the

21

marketplace as a whole. Given the consideration paid to judicial interpretations of Section 5 of the FTC Act by the language of the ICFA, the failure to implement reasonable data security practices falls well within the ambit of the ICFA's unfair prong. Also, as referenced above, GMS's failure to implement reasonable data security standards by itself is a violation of IPIPA, and thus a violation of the ICFA, and there is no requirement to satisfy Rule 9(b) with respect to IPIPA.

### C. Plaintiffs Have Alleged Losses Within the Meaning of the ICFA

Plaintiffs have alleged that they suffered pecuniary loss as a result of GMS's violation of the ICFA because each alleges that they would not have accepted employment or services from GMS had the material facts been disclosed. ¶¶205, 224, 261; *compare Geske v. PNY Techs., Inc.*, 503 F. Supp. 3d 687, 709 (N.D. Ill. 2020) (collecting cases and holding that under the ICFA benefit of the bargain damages suffice to show actual damages); *Mulligan v. QVC, Inc.*, 382 Ill. App. 3d 620, 628 (2008) (same); *see also In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1224 (N.D. Cal. 2014) (finding a price premium theory viable because a "company's security practices have economic value"). Plaintiff Ceja further alleges that she has paid over $700 for credit monitoring and repair services as a result of the Data Breach, which clearly demonstrates out-of-pocket losses within the meaning of the statute. ¶211; *compare Flores v. Aon Corp.*, 2023 IL App (1st) 230140, ¶ 43, 242 N.E.3d 340, 358 (collecting cases in which plaintiffs sufficiently alleged economic losses under the ICFA) (citing to *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 829-30 (7th Cir. 2018) (plaintiff spent $17 per month on a credit-monitoring service); *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d at 587-88 (plaintiff experienced fraudulent credit card charges); *Worix v. MedAssets, Inc.*, 869 F. Supp. 2d 893, 901 (N.D. Ill. 2012) (plaintiff alleged lost wages and money spent on credit monitoring).

Accordingly, the Court should reject GMS's arguments and allow Plaintiffs' ICFA claim.

22

### VIII.   PLAINTIFFS ARE ENTITLED TO SEEK EMOTIONAL DAMAGES AND INJUNCTIVE RELIEF

#### A.  Plaintiffs Can Recover Damages from Emotional Distress

Plaintiffs can recover damages for the emotional distress they suffered, as the distress is coupled with the risk of harm and actual identity theft. *See Cabezas v. Mr. Cooper Grp. Inc.*, 2025 WL 2053287, at *7 (N.D. Tex. July 22, 2025) ("emotional distress . . . when coupled with the risk of harm . . . is a concrete injury sufficient to confer standing[]" and holding that plaintiffs adequately alleged damages for negligence and implied contract claims); *Hawkins v. Scout Energy Mgmt., LLC*, 2025 WL 2244327, at *8 (N.D. Tex. Aug. 5, 2025) (same).

Plaintiffs allege stress, anxiety, and concern due to the loss of their privacy and concern over the impact of cybercriminals accessing and misusing their PII. ¶¶212, 230, 248, 266, 285, 303. This is not speculative. Plaintiffs Ceja and Deberry both suffered actual identity theft and fraud, being forced to spend hundreds of dollars to mitigate fraudulent activity on their financial accounts, which further caused them to experience emotional distress. ¶¶211, 283. Thus, Plaintiffs can recover damages for emotional distress that is coupled with the risk of harm, actual identity theft, and mitigation costs.

In *In re New Era*, the Court granted the plaintiffs leave to amend to provide further allegations that they have suffered emotional damages. 2026 WL 303547 at *10. To the extent that the court finds that the emotional distress allegations are insufficient, Plaintiffs request leave to amend.

#### B.  Plaintiffs Can Seek Injunctive Relief

To state a claim under the Declaratory Judgment Act, a plaintiff must allege the existence of a dispute that is "definite and concrete, touching the legal relations of parties having adverse legal interests," and that the dispute be "real and substantial and admit of specific relief through a

23

decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (cleaned up). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* Because the "Declaratory Judgment Act is 'an authorization, not a command' . . . federal courts have wide discretion to grant or deny declaratory judgment." *Aguiluz v. Citibank, N.A.*, No. 2:18-CV-05126, 2018 WL 5773302, at *5 (E.D. La. Nov. 2, 2018) (quoting *Pub. Affs. Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962)). Many federal courts have allowed plaintiffs to pursue injunctive relief in data breach cases, where the plaintiffs alleged continuing security deficiencies.[9]

Contrary to GMS's argument, there is nothing speculative about the Plaintiffs' allegations. Plaintiffs allege GMS's specific security failings that led to the Data Breach and those failings are ongoing. ¶¶14, 16, 22, 54, 61-63, 66, 69-71, 76-77, 81-82, 129-140, 145, 350, 362, 377, 392. Injunctive relief would cure the immediate and ongoing risk of further harm to Plaintiffs and others, as data security inadequacies remain unresolved. ¶¶13, 145, 310, 324, 364, 378.

GMS's reference to self-serving statements in its notice letter cannot save it. Mot. at 24. The measures taken by GMS were insufficient and do not guarantee the prevention of future breaches. ¶¶46-47, 50-51, 54-57. GMS has already shown itself to be incapable of protecting

---

[9] *See, e.g.*, *Zimmerman v. Highmark, Inc.*, 780 F. Supp. 3d 588, 601 (W.D. Pa. 2025) (finding plaintiffs had standing to seek injunctive relief); *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1141, 1151 (C.D. Cal. 2021) ("now that Defendants' insufficient data security is known to hackers, the PII in Defendants' possession is even more vulnerable to cyberattack"); *In re Capital One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d at 414–15 ("Plaintiffs have adequately alleged the existence of an actionable dispute for purposes of the Declaratory Judgment Act" because "there remains a dispute over the security of Plaintiff's [personal information], which continues to be stored on [defendant's] servers and remain subjected to a heightened risk of access and misuse by hackers."); *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 912-13 (N.D. Cal. 2024) (declining to dismiss the claim for injunctive relief because plaintiffs alleged that their information remains in defendant's possession, and defendant's data security infrastructure is insufficient); *In re Unite Here Data Security Incident Litig.*, 740 F. Supp. 3d 364 (S.D.N.Y. 2024) (same); *Leonard v. McMenamins, Inc.*, 2022 WL 4017674, *5-6 (W.D. Wash. Sep. 2, 2022).

Plaintiffs' and the Class's PII. ¶44, 61–63, 182. If GMS has not taken proper steps to fix its system's vulnerabilities, cybercriminals can and will continue to exploit this vulnerability over and over again. *See id.* Because GMS still holds Plaintiffs' PII, injunctive relief is necessary to compel GMS to adopt comprehensive security practices to mitigate the risk of future data breaches. *See, e.g.*, *Ambry Genetics*, 567 F. Supp. 3d at 1141 ("now that Defendants' insufficient data security is known to hackers, the PII in Defendants' possession is even more vulnerable to cyberattack"); *White v. United Network for Organ Sharing*, 2025 WL 2656044, at *3 n. 7 (E.D. Va. Sep. 16, 2025) (rejecting the defendant's request to credit the notice letter claims where they conflict with the well-pled allegations of the complaint); *In re Mednax Services, Inc., Customer Data Security Breach Litig.*, 603 F. Supp. 3d 1183, 1208 (S.D. Fla. 2022) (denying defendant's motion to dismiss because contradictions presented by both parties create a factual dispute for summary judgment).

Defendant's reliance on *In re ESO Solutions Inc. Breach Litig.*, 2024 WL 4456703 (W.D. Tex July 30, 2024), is misplaced. Unlike the plaintiffs in *ESO Solutions*, Plaintiffs here do not seek injunctive relief simply because a second breach <u>*may*</u> be possible. Instead, Plaintiffs have sufficiently detailed the ongoing and concrete risks directly caused by GMS's inadequate security practices (*see* ¶¶14-16, 18-20, 61, 69-71, 80, 83, 102-105, 132-144, 172-184), and how the injunctive relief would cure this immediate harm. ¶¶324, 364, 378.

## IX.    <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion should be denied. In the event the Court grants any part of the Motion, Plaintiffs request leave to amend. *See* Fed. R. Civ. P. 15(a)(2).

Dated: May 29, 2026

*/s/ A. Brooke Murphy*
A. Brooke Murphy
**MURPHY LAW FIRM**
4116 Will Rogers Pkwy, Suite 700
Oklahoma City, OK 73108

25

T: (405) 389-4989
E: abm@murphylegalfirm.com

John J. Nelson*
**MILBERG, PLLC**
280 S. Beverly Drive-Penthouse Suite
Beverly Hills, CA 90212
Tel: (858) 209-6941
jnelson@milberg.com

M. Anderson Berry*
**EMERY REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA  98101-1269
Telephone:  916/823-6955
anderson@emeryreddy.com

*Interim Co-Lead Class Counsel*

Joe Kendall
Texas Bar No. 11260700
S.D. Tex. Bar No. 30973
**KENDALL LAW GROUP, PLLC**
3811 Turtle Creek Blvd., Suite 825
Dallas, Texas 75219
Telephone: 214/744-3000
jkendall@kendalllawgroup.com

*Liaison Counsel*

Leanna A. Loginov
Andrew J. Shamis
**SHAMIS & GENTILE, P.A.**
14 NE 1st Ave, Suite 705
Miami, FL 33132
ashamis@shamisgentile.com
lloginov@shamisgentile.com

Mark T. Freeman
Texas Bar No. 24145545
Scott Edward Cole*
California Bar No. 160744
**COLE & VAN NOTE**
555 12TH Street, Suite 2100
Oakland, CA 94607
Telephone: (510) 891-9800

26

Email: mtf@colevannote.com
Email: sec@colevannote.com

Daniel Srourian, Esq.*
**SROURIAN LAW FIRM, P.C.**
468 N. Camden Dr. Suite 200
Beverly Hills, CA 90210
Telephone: (213) 474-3800
Facsimile: (213) 471-4160
Email: daniel@slfla.com

Samuel J. Strauss*
Raina Borrelli*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
(872) 263-1100
(sam@straussborrelli.com
raina@straussborrelli.com

Jeff Ostrow*
**KOPELOWITZ OSTROW P.A.**
1 W. Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Tel: (954) 332-4200
ostrow@kolawyers.com

Amber L. Schubert*
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union St, Ste 200
San Francisco, CA 94123
Tel: 415-788-4220
Fax: 415-788-0161
aschubert@sjk.law

Nickolas J. Hagman*
Mohammed A. Rathur*
**CAFFERTY CLOBES MERIWETHER &
SPRENGEL LLP**
135 S. LaSalle, Suite 3210
Chicago, Illinois 60603
Telephone: (312) 782-4880
Facsimile: (312) 782-4485
nhagman@caffertyclobes.com
mrathur@caffertyclobes.com

27

William B. Federman
Jessica A. Wilkes
**FEDERMAN & SHERWOOD**
4131 North Central Expressway, Ste. 900
Dallas, Texas 75204
Telephone: (800) 237-1277
E: wbf@federmanlaw.com
E: jaw@federmanlaw.com

Leigh S. Montgomery
lmontgomery@eksm.com
**ELLZEY KHERKHER SANFORD**
**MONTGOMERY, LLP**
4200 Montrose Blvd., Suite 200
Houston, Texas 77006
Phone: (888) 350-3931

Jeffrey S. Goldenberg
**GOLDENBERG SCHNEIDER, LPA**
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Tel: (513) 345-8291
jgoldenberg@gs-legal.com

Charles E. Schaffer
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
cschaffer@lfsblaw.com

Brett R. Cohen
**LEEDS BROWN LAW, P.C.**
One Old Country Road, Suite 347
Carle Place, NY 11514
Tel: (516) 873-9550
bcohen@leedsbrownlaw.com

*Additional Counsel for Plaintiffs*

* *Pro hac vice* applications pending

28

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 29, 2026, the foregoing was filed electronically with the Clerk of Court using the CM/ECF System and was served on counsel for Defendant via e-mail. Accordingly, the foregoing was served on all counsel of record.

*/s/ A. Brooke Murphy*
A. Brooke Murphy

29